**UNITED STATES COURT OF APPEALS**

**For the Fifth Circuit**

No. 96-30060

Summary Calendar

SAZERAC COMPANY, INC., A Louisiana Corporation

Plaintiff-Appellee,

VERSUS

SKYY SPIRITS, INC., A Delaware Corporation

Defendant-Appellant.

Appeal from the United States District Court
For the Eastern District of Louisiana
(95-CV-3243-C)
July 29, 1996

Before REYNALDO G. GARZA, KING and EMILIO M. GARZA, CIRCUIT JUDGES

PER CURIAM:[*]

---

[*]Local Rule 47.5 provides:  "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

1

Background

Before us is an appeal placed on the summary calendar to expedite its resolution. Appellant, SKYY Spirits, Inc. ("SKYY"), sought a preliminary injunction against the Appellee, Sazerac Company, Inc.("Sazerac"), from selling TAAKA vodka in a cobalt blue bottle similar to that employed by SKYY.[1] SKYY, maker of a "high quality super premium vodka," has used a cobalt blue bottle since October 1993. Capitalizing on a greater multi-industry trend toward use of cobalt blue, a neo-retro fad color, SKYY experienced great sales. Almost two years later, in September 1995, Sazerac introduced a new, triple-filtered vodka entitled TAAKA Platinum. Sazerac sold TAAKA Platinum in the traditional TAAKA bottle but with the addition of blue color to the exterior. SKYY's bottle bears a blue, silver and gold label while TAAKA Platinum's bottle bears silver and blue colors with the traditional TAAKA Russian onion dome motif.[2] Believing TAAKA to be infringing on SKYY's alleged trade dress, SKYY threatened suit under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Sazerac responded with a request for declaratory judgment, hoping to vindicate their right to join the craze for cobalt blue.

---

[1] Sazerac has sold vodka under the TAAKA label since 1952 and has used the exact bottle shape at issue for the past six years (prior to SKYY's inception).

[2] Additional differences in the bottles include slightly different shades of cobalt blue, TAAKA Platinum's longer neck bearing a label (SKYY has no neck label), and the location of raised lettering on the back of the bottles.

SKYY counterclaimed, requesting preliminary injunctive relief in time for the holidays so that typical seasonal overconsumption and commercial faddism for the newest color would accrue only to SKYY. The lower court denied SKYY's request because of the unlikelihood of success on the merits. Specifically, the district court held that the appearance of SKYY's bottle did not merit trade dress protection - the bottle neither was inherently distinctive nor had acquired distinctiveness over time ("secondary meaning"). Additionally, there was little likelihood of confusion between the products and thus no infringement.

SKYY appeals the determinations that its bottle lacks inherent distinctiveness and that there is little likelihood of confusion. Because we cannot say that the district court erred in finding lack of inherent distinctiveness, we will not overturn the denial of preliminary injunctive relief.[3]

## Discussion

A.   Standard of Review

We review the lower court's decision to deny the motion for preliminary injunction for abuse of discretion. Lakedreams v. Taylor, 932 F.2d 1103, 1107 (5th Cir. 1991). The district court's

---

[3] As discussed below, SKYY must show both a protectable trade dress and a likelihood of confusion on its trade dress infringement claim. Our agreement with the district court on the issue of distinctiveness obviates our consideration of the likelihood of confusion.

findings of fact made in ruling on the preliminary injunction motion are subject to the clearly erroneous standard of review, while legal determinations are subject to plenary review.  Id.


B. Preliminary Injunction of a Trade Dress Infringement

A preliminary injunction is appropriate when the moving party establishes: (1) a substantial likelihood of success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) that the threatened injury outweighs any damage that the injunction may cause the opposing party; and (4) that the injunction will not disserve the public interest. Allied Marketing Group, Inc. v. CDL Marketing, Inc., 878 F.2d 806, 809 (5th Cir. 1989).  A preliminary injunction is an extraordinary remedy and a court should grant a request for the motion only if the movant has clearly carried the burden of persuasion with respect to all four  factors.  Id.

The district court denied SKYY's request for preliminary injunctive relief because SKYY has not shown a substantial likelihood of success on its trade dress infringement claim. "Trade dress" refers to the image and overall appearance of a product.  Id. at 812.  Section 43 of the Lanham Act, 15 U.S.C. §1125(a), prohibits a party from "passing off" its goods or services as those of a competitor by employing a substantially similar trade dress which is likely to confuse consumers as to the

4

source of the product.[4] Id.   To prevail on a claim for trade dress infringement, SKYY must show that: (1) its trade dress qualifies for protection because it is distinctive or has acquired a secondary meaning and is nonfunctional; and (2) that the trade dress has been infringed as determined by the likelihood of confusion between SKYY's product and TAAKA's.  Two Pesos, Inc. v. Taco Cabana, Inc., 120 L.Ed.2d 615, 624 (1992).

The Supreme Court has considered the question of distinctiveness of trade dress with regard to five categories of appearance:  suggestive, arbitrary, fanciful, descriptive and generic.  Id. at 623.  Trade dresses that are suggestive, arbitrary or fanciful can be inherently distinctive.  Merely descriptive trade dress can acquire distinctiveness through secondary meaning.[5]

---

[4] Section 43(a) of the Lanham Act provides in relevant part:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or representation of fact, which --
   (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .

shall be liable in a civil action by any person who believes that he is or is likely to be damaged by such act.

[5] SKYY makes no argument on this appeal with regard to secondary meaning.  Accordingly, such argument is waived.  SKYY

Trade dress that is generic cannot be distinctive. Id.at 624.

A court may also consider whether alleged trade dress is commonly used, is unique or unusual in its particular field, or is a mere refinement of commonly-adopted and well-known forms of ornamentation for the goods in question. See Brooks Shoe Manufacturing Co. v. Suave Shoe Corp., 716 F.2d 854, 857-858 (11th Cir. 1983); Seabrook Foods, Inc. V. Bar-well Foods, Ltd., 568 F.2d 1342, 1344 (C.C.P.A. 1977). As offered in a noted commentary, "The issue is whether the trade dress is of such an unusual design that a buyer will immediately rely on it to differentiate the source of the product." 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 8.02[4] (3d Ed. 1995) (citing Tone Brothers, Inc. v. Sysco Corp., 28 F.3d 1192, 1206 (Fed. Cir. 1994), cert. denied, 115 S.Ct. 1356 (1995)).


C.    The District Court's Method and Finding

SKYY contends that the district made an error of law by improperly considering each facet of the bottle, finding them each to be non-distinctive, rather than considering solely the overall appearance. SKYY additionally maintains that the lower court's finding on the issue was clearly erroneous. However, the lower court was well aware of the law, stating that trade dress is the "overall image or appearance of the product." Showing its

_____

must rely on demonstrating inherent distinctiveness.

6

understanding that the elements of a product are to be considered in the aggregate, the lower court also stated that "the SKYY bottle, <u>measured by shape, size and label</u>, is of an appearance more generic to alcoholic beverages than distinctive." Later in its opinion, the district court declared that

> <u>Considering all the aspects comprising trade dress</u>, the Court is unwilling and unable to find that SKYY's alleged trade dress is inherently distinctive . . . .

A trial court would have great difficulty in evaluating the overall appearance of a product without listing and discussing the different facets that comprise that product's appearance. <u>See</u> McCarthy, <u>supra</u>,§ 8.01[1][c].

With regard to the finding on distinctiveness, we discern no error as well. The lower court, in evaluating the overall appearance of the bottles in question, concluded that the shape, size, label and color are not inherently distinctive. As the lower court noted, SKYY's bottle shape is one "more generic to alcoholic beverages than distinctive." As for the "unique" cobalt blue color of the bottle and label, the record is rife with examples of cobalt blue liquor and wine bottles, many with blue labels. On the record established below, the overall image of SKYY's bottle does not seem to be of "such an unusual design that a buyer [would] immediately rely on it to differentiate the source of the product." <u>Tone Brothers</u>, 28 F.3d at 1206. Having viewed SKYY's bottle ourselves, we cannot state that the lower court's finding on distinctiveness was clearly erroneous. Properly ruling that SKYY had not shown a

7

substantial likelihood of success on the merits, the lower court did not abuse its discretion in refusing to enjoin Sazerac.

## Conclusion

We express no opinion as to the final merits of SKYY's claim of inherent distinctiveness should it make a different and more extensive record at trial. However, because we perceive no error in the lower court's findings with regard to distinctiveness of trade dress, the district court's order denying the request for preliminary injunctive relief must be AFFIRMED. This case should be given priority, if possible, by the court below for trial on the merits.